**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRITISH BROADCASTING CORP.,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE – CIVIL DIVISION, FEDERAL PROGRAMS BRANCH,<br><br>Respondent. | Case No. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION TO COMPEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45**

**BALLARD SPAHR LLP**

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Yanni Chen (#1724687)
Maya Gandhi (#NY0584)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2218
Fax: 202-661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
cheny@ballardspahr.com
gandhim@ballardspahr.com

Sasha Dudding (#1735532)
1675 Broadway, 19th Floor
New York, NY 10019
Tel: 646-346-8094
duddings@ballardspahr.com

*Attorneys for Petitioner*

## PRELIMINARY STATEMENT

The sitting President of the United States, Donald J. Trump, is suing Petitioner the British Broadcasting Corporation ("the BBC") for defamation, claiming that a 2024 BBC documentary implied that his speech at the Ellipse on January 6, 2021 incited the violence that erupted that day at the United States Capitol. *See President Donald J. Trump v. BBC* ("*Trump v. BBC*"), No. 1:25-cv-25894-JTK-EAL (S.D. Fla.). But because President Trump is a public official suing over speech on a matter of public concern, he must *prove*—not just allege—that this challenged implication is false. The BBC has therefore propounded discovery requests to President Trump and third parties regarding President Trump's actions and communications before, during, and after his speech on January 6.

One of those discovery requests is a deposition subpoena that the BBC issued to Pat Cipollone, who served as White House Counsel, communicated directly with President Trump on January 6, and observed him react to news of the Capitol riot. Mr. Cipollone has not moved to quash the subpoena. Earlier this month, however, the Department of Justice ("DOJ") attempted to block this subpoena, notifying the BBC that "Mr. Cipollone is not authorized to provide the requested testimony." Ex. A (DOJ letter to BBC). DOJ offered four grounds for opposing the deposition, all of which fail to withstand scrutiny.

**First**, DOJ claims that Mr. Cipollone's deposition is "premature." Ex. A at 1. But discovery has been proceeding in the underlying lawsuit for seven months, and only three months remain before discovery closes on December 18, 2026. The subpoena is therefore ripe.

**Second**, DOJ claims that it is improper for the BBC to take the deposition of "high-ranking government officials," *id.*, but the general "apex doctrine" does not apply where, as here, the official has unique, *personal* knowledge relevant to the lawsuit.

**Third**, DOJ claims that Mr. Cipollone's testimony is not "relevant and proportional to the needs of this case," *id.* at 2, but the Florida Court has already concluded the opposite: given President Trump's burden to prove falsity, the BBC is "entitled to discover [his] intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech." *See* Omnibus Order Following Discovery Hearing on J. Mots. for Discovery Hr'g (the "Omnibus Order") at 9-11, *Trump v. BBC*, ECF 120. The testimony that Mr. Cipollone would provide about January 6, especially about his interactions directly with President Trump that day, thus falls squarely within the scope of discovery.

**Fourth**, DOJ claims that Mr. Cipollone's testimony is "covered by multiple privileges, including Executive Privilege and, due to Mr. Cipollone's service as White House Counsel, Attorney-Client Privilege." Ex. A at 2. But attorney-client privilege does not cover Mr. Cipollone's testimony here because he was not acting as President Trump's *personal* attorney on January 6. Furthermore, the demands of due process surely prevent the sitting President from filing a defamation lawsuit against a news organization and then asserting executive privilege to block that defendant from obtaining evidence to contest his claims. Moreover, the BBC understands that former Chief Judge Beryl A. Howell has *already* rejected claims of executive privilege and attorney-client privilege over Mr. Cipollone's testimony about the same topics that the BBC seeks to explore at his deposition. The BBC is currently seeking to unseal those opinions and orders, which could preclude these privilege claims entirely. *In re Appl. of the BBC for Access to Opinions and Orders Adjudicating Certain Assertions of Exec. Priv.* ("*In re BBC*"), No. 1:26-mc-81-JEB (D.D.C.).

For all these reasons, and as discussed below, the BBC is entitled to obtain Mr. Cipollone's testimony. The Court should grant this motion and reject DOJ's efforts to block his deposition.

## BACKGROUND AND PROCEDURAL HISTORY

The BBC is the U.K.'s main public service provider of news and entertainment media, and its program *Panorama* is the world's longest-running current affairs program and focuses on wide-ranging topics of interest to British audiences. On October 28, 2024, the BBC aired the *Panorama* documentary, "Trump: A Second Chance?" ("the Documentary"), to its United Kingdom-based audience. The Documentary aimed to explain the bases for President Trump's support, and it followed several supporters in the run-up to the 2024 presidential election. The Documentary also featured interviews with commentators, including academics and political figures. Some voiced support for the President, saying "many people want to get back to that strong leadership," while others voiced sharply critical opinions, including by calling him a "cult leader."

Those statements are not at issue. Instead, over a year after the Documentary aired, and after his re-election, President Trump challenged a 12-second segment that showed excerpts of his speech at the White House Ellipse on January 6, 2021 ("the Speech"). President Trump does not contest that he spoke the words that the BBC aired; rather, he alleges that by editing together different parts of his speech, the Documentary defamed him by creating the "false . . . message that [he] fomented violence." First Am. Compl. ("FAC") ¶ 135(c), *Trump v. BBC*, ECF 124.

On December 15, 2025, President Trump filed his initial Complaint against the BBC, alleging that the edit of his January 6 speech defamed him and violated Florida's Deceptive and Unfair Trade Practices Act, and demanding $5 billion in damages on each count. *See generally* Compl., *Trump v. BBC*, ECF 1. The BBC promptly moved to stay merits-based discovery and permit only jurisdictional discovery until the BBC's then-forthcoming motion to dismiss was resolved, including because merits-based discovery would likely require the resolution of disputes over, *inter alia*, executive privilege and attorney-client privilege. *See* BBC's Mot. to Stay Discovery in Part at 19, *Trump v. BBC*, ECF 18. President Trump opposed the motion, brushing

off the BBC's concerns as "a parade of hypothetical and unconvincing privilege" arguments, Pl.'s Opp. to Mot. to Stay at 15, *Trump v. BBC*, ECF 24. The Court denied a stay, *see* Order, *Trump v. BBC*, ECF 26, and the parties began to take both merits and jurisdictional discovery.

The BBC has participated fully and fairly in discovery since then, producing more than 100,000 pages of documents across twelve rolling productions and making multiple witnesses available for deposition. President Trump, by contrast, has failed to participate meaningfully, providing only one production of 735 pages all taken from the internet shortly before the production was made, and largely objecting to the BBC's discovery requests, including a request that President Trump merely identify the individuals with whom he communicated on January 6, 2021. President Trump has thus stymied the BBC's efforts to obtain information about the very topics that the Florida court has concluded are proper subjects for discovery, including President Trump's "intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech," such as "whether President Trump gave it intentionally or otherwise; the breadth of the audience of the message and impression; and the extent of any resulting injury or harm." Omnibus Order at 9-11.

President Trump's efforts to impede the BBC have extended to third-party discovery as well. For one, President Trump has directed Greg Jacob, former counsel to Vice President Mike Pence, not to produce records to the BBC in response to a document subpoena on the grounds that those records might be covered by executive privilege. *See* Notice, *In re BBC*, No. 26-mc-81-JEB (D.D.C.), ECF 6. For another, President Trump has refused to direct the U.S. Secret Service to permit service of document and deposition subpoenas on Donald Trump, Jr., Ivanka Trump, and Jared Kushner, even though those three individuals have personal knowledge that bears directly on multiple elements of President Trump's claims. *See* Mot. for Alternative Service, *Trump v.*

*BBC*, ECF 127. President Trump has also threatened to seek sanctions against the BBC over a deposition subpoena that the BBC issued to former White House Counsel Pat Cipollone, claiming that his testimony is privileged. *See* 2d Suppl. Notice, *In re BBC*, ECF 9.

Just days after President Trump made this threat of sanctions, DOJ echoed his arguments in a letter from an attorney for DOJ's Civil Division, Federal Programs Branch, which declared that "Mr. Cipollone is not authorized to provide the requested testimony." Ex. A at 2. The BBC therefore has postponed the deposition pending the Court's resolution of this issue, and pursuant to Rule 45, the BBC now moves to compel the DOJ to permit Mr. Cipollone to testify.

## ARGUMENT

This Court should compel the DOJ to allow Mr. Cipollone to comply with his deposition subpoena because Mr. Cipollone's testimony is highly relevant to a key element of President Trump's defamation claim in the underlying litigation, because the DOJ has not adequately demonstrated that privilege or undue burden should hinder the BBC's request, and because the DOJ's various other objections are all unavailing.

### I. The Rule 45 Standard Governs This Motion to Compel

The DOJ's effort to block Mr. Cipollone's deposition subpoena is constructively a denial of a *Touhy* request issued in connection with federal litigation and accordingly is evaluated under the ordinary Rule 45 standard. *See Watts v. SEC*, 482 F.3d 501, 508-09 (D.C. Cir. 2007) ("[A] challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel.").

When evaluating a motion to compel under Rule 45, "the district court first must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined in Rule 26(b)(1)" and then "must assess any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for

privileged matter or would cause an undue burden.'" *Buzzfeed, Inc. v. DOJ*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (quoting *Watts*, 482 F.3d at 508). The DOJ, as the party resisting discovery, has the burden of demonstrating that the request is unduly burdensome or privileged. *See id.* (quoting *In re Micron Tech., Inc. v. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)); *see also Millenium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) ("The person objecting to production has a heavy burden to show that the subpoena should not be enforced.").

## II. Mr. Cipollone's Testimony About His Personal Experiences Related to the Events of January 6, 2021 Meets This Court's Broad Construction of Relevance

Relevance for purposes of Federal Rule of Civil Procedure 26(b)(1) is "broadly construed" and need only to "reasonably . . . lead to other matter that could bear on any party's claim or defense." *Food Lion, Inc. v. United Food and Comm. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997); *Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 44 (D.D.C. 2017). The Court in Florida has already provided the framework that demonstrates this standard is clearly satisfied here. Indeed, under any definition of relevance, Mr. Cipollone's testimony plainly qualifies.

To prove a viable defamation claim as a public official about a matter of public concern, President Trump must establish that he did *not* foment violence on January 6, 2021. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (defamation requires falsity). Thus, discovery that bears on President Trump's "intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech" is highly relevant to President Trump's claims—and Magistrate Judge Lett has already found that the BBC is entitled to it. Omnibus Order at 11. Individuals who had knowledge of those facts, or who

personally observed President Trump before, during, and after his Speech, thus have personal knowledge of events that are highly relevant to President Trump's defamation claim.

Mr. Cipollone has such personal knowledge. When Mr. Cipollone learned about the violence at the Capitol taking place after the Speech, he and White House Chief of Staff Mark Meadows "went down to the Oval Office, [they] went through the Oval Office, and [they] went to the back where the President was," at which point Mr. Cipollone "was pretty clear there needed to be an immediate and forceful response, statement, public statement, that people need to leave the Capitol now." U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the U.S. Capitol, Interview Transcript of Pasquale Anthony "Pat" Cipollone ("Cipollone Tr.") at 149:12-150:4 (available at https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000928885/pdf/GPO-J6-TRANSCRIPT-CTRL0000928885.pdf). Because Mr. Cipollone's testimony about how President Trump responded and reacted would be probative of the President's intentions in giving the Speech, Mr. Cipollone's testimony would be highly relevant to President Trump's claims in the underlying litigation.

## III. The DOJ's Objections Do Not Justify Blocking Mr. Cipollone's Deposition

None of the DOJ's objections, separately or together, satisfy its "heavy" burden to show that the BBC's subpoena should not be enforced. *See Millenium TGA, Inc.*, 286 F.R.D. at 11.

### A. Mr. Cipollone's Prior Testimony Cannot Substitute for His Deposition

The DOJ first argues that Mr. Cipollone's statements before the House Select Committee "provide a ready alternative for Defendant to obtain non-privileged information it seeks to obtain through deposition." Ex. A at 2. But Mr. Cipollone *refused* to testify before the House Select Committee about his communications with President Trump on the basis of executive privilege. *See* Cipollone Tr. at 7:8-9 (counsel for Mr. Cipollone's stating that "Mr. Cipollone will not speak

about Presidential – direct Presidential communications as those are privileged"). Mr. Cipollone thus provided *no* testimony about his communications with President Trump on January 6—the topic that would be the primary focus of the BBC's deposition. *See id.* at 149:17-150:9. Mr. Cipollone's House Select Committee testimony thus cannot possibly substitute for his deposition.

The mere fact that he has testified in another forum also cannot preclude his deposition for President Trump's defamation litigation in any event. *See Flanagan v. Wyndham Int'l Inc.* 231 F.R.D. 98, 104-05 (D.D.C. 2005) (non-party's prior testimony in a case did not preclude testimony in a related lawsuit where defendants could still elicit additional relevant information). The BBC is entitled to "probe the veracity and contours of the statements" of Mr. Cipollone through its own attorneys, and those attorneys may ask Mr. Cipollone questions relevant specifically to the BBC's defense, rather than relying on the lines of inquiry set by the House Select Committee. *Alexander v. FBI*, 186 F.R.D 113, 121 (D.D.C. 1998); *see also Danzy v. IATSE Local 22*, 2020 WL 6887651, at *8 (D.D.C. Nov. 23, 2020) (finding that the fact that relevant witnesses from whom depositions were sought already testified in hearings that preceding the litigation "should not preclude them from being deposed in this case"). The DOJ has therefore failed to demonstrate that Mr. Cipollone's House Select Committee testimony provides a substitute for his deposition.

**B. Mr. Cipollone's Deposition Is Not Premature**

The DOJ also fails to substantiate its claim that the BBC's request for Mr. Cipollone's testimony is premature. For one, the BBC has already been engaged in discovery for seven months, and only three months remain until the close of discovery. *See* Order Granting J. Mot. to Extend Certain Pretrial Deadlines and Continue Trial at 2, *Trump v. BBC*, ECF 141. For another, President Trump's First Amended Complaint did not narrow his claims about the alleged falsity of the implication that he claims the Documentary conveyed. *Compare* Compl. ¶ 44, *Trump v.*

*BBC* (alleging that "the BBC's intended, false, malicious, and defamatory message [was] that President Trump fomented violence"), *with id.*, FAC ¶ 54 (same). And while the parties continue to litigate several discovery-related disputes in the underlying litigation, the contents of Mr. Cipollone's deposition would fall squarely within the scope of Magistrate Judge Lett's operative and unchallenged Omnibus Order, which held that the BBC is entitled to discovery related to "Plaintiff's intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the [S]peech." Omnibus Order at 11. The DOJ has thus failed to show that Mr. Cipollone's deposition is somehow premature.

### C. Mr. Cipollone's Deposition Does Not Violate the Apex Doctrine

The DOJ's next argument, that the BBC's deposition subpoena is "substantively improper" because it compels the testimony of a high-ranking government official, ignores both the facts of this case and the case law on the "apex doctrine." It is well settled that "[t]he apex doctrine shields certain high-ranking officials from being deposed," but those protections do not apply when the official has "personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 6-7 (D.D.C. 2018) (permitting deposition of witness "notwithstanding his status as a high ranking corporate officer"). Here, the BBC seeks Mr. Cipollone's testimony about his own interactions with and unique observations of President Trump on January 6. Mr. Cipollone's testimony would therefore be material to the case, it would be based entirely on his own unique, personal knowledge, and the same information cannot be obtained elsewhere. The apex doctrine thus does not prevent Mr. Cipollone's deposition in this case.

### D. Neither Executive Privilege Nor Attorney-Client Privilege Justifies Blocking Mr. Cipollone's Deposition

Finally, DOJ's blanket assertions of executive privilege and attorney-client privilege do not justify blocking the BBC's subpoena. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted). But under *In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998), attorney-client privilege does not protect communications between the President and an attorney from the White House Counsel's Office unless that attorney was acting only as an intermediary between the President and his private attorneys. Attorney-client privilege thus does not shield President Trump's communications with Mr. Cipollone on January 6 because Mr. Cipollone was serving as the White House Counsel, not President Trump's private attorney, and there is no factual predicate to establish that Mr. Cipollone was acting as an intermediary that day.

Executive privilege, and specifically the presidential communications privilege, allows the President to refuse to disclose "documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential." *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997). But "the presidential communications privilege is qualified, not absolute, so when invoked in a civil or criminal case, for example, it may be overcome by an adequate showing of need." *Protect Democracy Project, Inc. v. NSA*, 10 F.4th 879, 886 (D.C. Cir. 2021) (citing *Dellums v. Powell*, 561 F.2d 242, 247-50 (D.C. Cir. 1977), for the proposition that executive privilege can be overcome in civil litigation). In particular, executive privilege "may give way in the face of other strong constitutional values," including "the

fundamental demands of due process of law." *See Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (cleaned up).

The BBC has amply demonstrated its need for Mr. Cipollone's testimony. Mr. Cipollone was one of the few individuals known to have communicated directly with President Trump on January 6, and to have personally witnessed President Trump's reaction to the news of violence at the Capitol. Indeed, Mr. Cipollone has testified in general terms that he conveyed to President Trump that "there needed to be an immediate and forceful response, statement, public statement, that people need to leave the Capitol now," *see* Cipollone Tr. at 149:1-150:9. But Mr. Cipollone has never testified publicly about what he said to President Trump specifically, or what President Trump said in response. Those details would be uniquely valuable evidence of President Trump's intentions and goals on January 6. Because President Trump has placed those subjects directly at issue by filing a defamation lawsuit against the BBC, due process now prevents President Trump from asserting executive privilege to block the BBC from obtaining evidence about those subjects. Thus, even assuming *arguendo* that executive privilege could apply to President Trump's discussions with Mr. Cipollone on January 6, that privilege is overcome here.

The government's assertion of attorney-client privilege and executive privilege thus do not suffice to bar Mr. Cipollone's deposition. Indeed, if public reports are correct that the government successfully opposed such privilege claims as to Mr. Cipollone specifically, it is remarkable that the government of today is taking up a position that the government of yesterday soundly defeated. Yet that is certainly what it looks like from examining the redacted opinions issued by then-Chief Judge Howell, which soundly rejected then-former President Trump's efforts to assert attorney-client privilege and executive privilege to block the testimony of certain witnesses, at least one of whom was a government attorney. *See, e.g.*, Mem. Op., *In re Grand Jury Subpoenas [Redacted]*,

No. 22-gj-25-BAH (D.D.C. Sept. 28, 2022) (rejecting assertions of attorney-client privilege and executive privilege); Mem. Op., *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-33-BAH (D.D.C. Nov. 19, 2022) (same); Mem. Op., *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-39-BAH (D.D.C. Dec. 9, 2022) (same).[1] Those decisions thus presumably weigh against DOJ's effort to block Mr. Cipollone's deposition and may preclude the government's arguments altogether. *See, e.g.*, *Herrera v. Wyoming*, 587 U.S. 329, 342 (2019) ("Under the doctrine of issue preclusion, a prior judgment forecloses successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.") (cleaned up).

Because these assertions of executive privilege and attorney-client privilege are baseless, DOJ has once again failed to justify blocking Mr. Cipollone's deposition testimony.

## CONCLUSION

For the foregoing reasons, the BBC respectfully requests that this Court grant its motion to compel and require DOJ to permit Mr. Cipollone to comply with the BBC's deposition subpoena.

Dated: September 22, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

By: ____________________
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Yanni Chen (#1724687)
Maya Gandhi (#NY0584)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2218 | Fax: 202-661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
cheny@ballardspahr.com
gandhim@ballardspahr.com

[1] These redacted decisions are docketed in *In re Donald Trump*, No. 1:25-mc-8-JEB (D.D.C.), at ECF 11-3, ECF 11-8, and ECF 11-14, respectively.

Sasha Dudding (#1735532)
1675 Broadway, 19th Floor
New York, NY 10019
Tel: 646-346-8094
duddings@ballardspahr.com

*Attorneys for Petitioner*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of September 2026, I caused true and correct copies of the foregoing to be served by email and U.S. Mail on the following:

Jacob S. Siler
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Jacob.S.Siler@usdoj.gov

/s/ *Charles D. Tobin*
Charles D. Tobin